In re NATIONAL STUDENT
MARKETING LITIGATION.

M.D.L. No. 105.
Misc. No. 134–72.
Civ. A. Nos. 2405–72, 2406–72, 2407–20.

United States District Court,
District of Columbia.

Jan. 9, 1978.

Frank J. Delany, Robert J. Stanford, Washington, D. C., for Louis W. Biegler and the Biegler Foundation.

William E. Haudek, Julius Levy, Stephen P. Hoffman, New York City, for plaintiffs and Pomerantz, Levy, Haudek & Block.

James E. Tolan, John Logan O'Donnell, Bruce E. Pindyck, New York City, for Olwine, Connelly, Chase, O'Donnell & Weyher and National Student Marketing Corp.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

The National Student Marketing Corporation (Student Marketing or NSMC) stock fraud scheme has spawned extensive litigation. In addition to the Securities and Exchange Commission suit seeking injunctive relief against certain corporate officials, accountants and attorneys, several private proceedings were filed seeking money damages and other relief. Among those private proceedings are the three above-captioned actions which have been consolidated and designated as class actions.

This opinion relates to the claims brought by Louis W. Biegler and the Biegler Foundation (the Bieglers), formerly members of the plaintiff class in these actions, but later named as defendants in an amended complaint. In response to the amended complaint the Bieglers filed a two-count counterclaim charging misconduct against the law firm of Pomerantz, Levy, Haudek & Block (Pomerantz Levy or PLHB), the law firm of Olwine, Connelly, Chase, O'Donnell & Weyher (Olwine Connelly or OCCOW) and the named plaintiffs in these actions.[1] Pomerantz Levy is general counsel for the class plaintiffs and Olwine Connelly represents Student Marketing. In substance the Bieglers claim that as members of the plaintiff class they were inadequately and fraudulently represented by the named plaintiffs and Pomerantz Levy through the failure of the class representatives to seek rescission of the 1969 merger of the Interstate National Corporation (Interstate or INC) into Student Marketing. They also allege that Olwine Connelly colluded with the plaintiffs and the Pomerantz Levy firm. The details of the counterclaim are discussed *infra* at pages 161–162.

The Bieglers have moved for class certification of the first count. The two law firms and the plaintiffs have moved for summary judgment on the counterclaim.[2] The legal memoranda, the volume of documents and exhibits, and the oral argument of counsel have been considered. For the reasons expressed below, the Court concludes that the Bieglers' motion for class certification of the first count of the counterclaim should be denied, that the claims present no genuine issue of material fact, and that summary judgment on the counterclaim in favor of the two law firms and the named plaintiffs is appropriate.

The Bieglers have also filed a barrage of other motions: (1) a motion to vacate the 1974 settlement between the class and Student Marketing; (2) a motion to disqualify Pomerantz Levy and other counsel from further representing the class; (3) motions to intervene as plaintiffs in the class actions; and (4) an initial and supplemental motion for security for costs in the action by the class against the Bieglers. Those motions have been duly considered, found lacking in merit, and must be denied.

## BACKGROUND

### The Corporate Merger and the Resulting Litigation

The Student Marketing and Interstate merger was consummated on October 31, 1969. Under the merger agreement, INC shareholders received NSMC stock in ex-

---

1. The named plaintiffs are Louis Garber, Mildred Lipsig, Harry Lipsig, Rose Kartrell, Jessie Inger, Sheila A. Noodine, Edna C. Drexler, Richard Byrne and Domenick L. Natale. They have in turn filed a cross-claim against Pomerantz Levy with respect to the Bieglers' counterclaim, contending that PLHB should be held primarily liable for any damages awarded the Bieglers.

2. Although the motion of OCCOW is for judgment on the pleadings or, in the alternative, for summary judgment, it has been treated solely as one for summary judgment since matters outside the pleadings have been considered. Fed.R.Civ.P. 12(c).

In their motions for summary judgment, plaintiffs and the two law firms have also moved for an award of attorney fees incurred as a result of their defense to the Bieglers' counterclaim. Since the issues involved in such an award have not been fully addressed by the parties, the Court will take no action on the request for attorney fees at this time, but instead will require the parties to file additional papers directed to the appropriateness of such an award.

change for their Interstate shares. Louis W. Biegler, a director of Interstate, and the Biegler Foundation, of which Biegler was the principal trustee, were major shareholders in Interstate and consequently received substantial amounts of NSMC stock.

Although the value of NSMC stock rose immediately after the merger, by February of 1970 its market price had plummeted. This triggered various lawsuits charging fraud and violations of the securities laws. The three class actions now before this Court were originally filed in the District Court for the Southern District of New York.[3] In early 1972 they were consolidated and Pomerantz Levy was appointed plaintiffs' general counsel for motion practice and pretrial proceedings. On December 1, 1972, these actions and other cases pending against Student Marketing were transferred by the Judicial Panel on Multidistrict Litigation to this Court for consolidated pretrial proceedings. The consolidated cases were certified as a class action in late 1973. Notice was sent to all class members, including the Bieglers. It provided that the opt-out period pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure would expire November 30, 1973.[4]

### The Settlement Discussions

The potential liability of Student Marketing in the lawsuits was extremely high and careful consideration was given to the possibility that NSMC's financial foundation would be weakened, if not destroyed, by protracted litigation. Settlement was therefore considered an important element for the survival of the company.[5] Representatives of Student Marketing participated with Pomerantz Levy in negotiations toward that end.[6]

During these discussions, especially as the opt-out date drew near, the negotiators feared that one of the recently acquired subsidiary companies of NSMC would withdraw from the class actions and assert an individual claim, possibly for rescission of its merger with NSMC.[7] If successful, a rescission action would further diminish Student Marketing's assets, which were already insufficient to meet the potential liability. All involved recognized that if one

3. Louis Garber brought the first of these class actions on March 2, 1970, on behalf of all persons who had purchased NSMC stock between November 5, 1969, and February 17, 1970. Mildred Lipsig and others filed the second complaint on May 15, 1970, on behalf of all purchasers between April of 1968 and March 1, 1970. Domenick L. Natale filed the third action on February 18, 1972, on behalf of purchasers of NSMC stock between April of 1968 and March 1, 1970, the same class as in the *Lipsig* action. Only the *Natale* action specifically alleged the receipt of NSMC stock through the merger of Interstate into Student Marketing. Pomerantz Levy represented plaintiffs in the *Garber* action and had a collaboration agreement with counsel in the *Lipsig* action. Exhibit 3063, deposition of Abraham L. Pomerantz, June 27, 1977.

4. Rule 23(c)(2) provides:
(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

5. Deposition of Bruce Schimberg, June 21, 1977, at 12; deposition of Claire V. Hansen, June 23, 1977, at 17.

6. It appears that Pomerantz Levy undertook early negotiations on behalf of both the *Garber* and *Lipsig* classes due to a collaboration agreement with counsel for the *Lipsig* action. *See* note 3 *supra*. Upon being appointed general counsel for the consolidated actions in April of 1972, PLHB assumed responsibility for all plaintiffs in the class actions. Deposition of Abraham L. Pomerantz, June 27, 1977, at 16–21.

7. Deposition of Joseph J. Cottrell, June 21, 1977, at 67–68; deposition of Bruce Schimberg, June 21, 1977, at 102–04. In a several month period surrounding the merger of Interstate into NSMC, Student Marketing acquired several other companies through mergers. Some, such as Interstate, remained profitable after disclosure of the fraud and might have benefited by rescission of their merger with NSMC. *See* Cottrell deposition, *supra* at 74–75.

company attempted to withdraw from the class actions and bring a separate action, the other subsidiaries would be forced to follow in order to protect their chance for recovery. The unavoidable result would be the bankruptcy of Student Marketing, an event which would devastate the subsidiary companies, particularly the Interstate insurance companies which relied heavily upon public trust.[8]

To forestall such a domino effect, those persons who had received substantial amounts of NSMC stock in exchange for their stock in companies acquired by Student Marketing executed a "sign-off" agreement.[9] The agreement provided, inter alia, that the signatories (1) would not elect exclusion from the class action; (2) would relinquish all claims against NSMC except those asserted in the class action; and (3) would try to reach a settlement of the class claims against NSMC in return for a pro-rata share in a settlement fund consisting of at least 1,500,000 shares of NSMC stock. Biegler executed this agreement for himself and the Biegler Foundation on November 20, 1973, ten days before the expiration of the opt-out period for the class.

On April 8, 1974, a Stipulation and Agreement of Compromise and Settlement was entered into by representatives of the class and Student Marketing, specifically by Pomerantz Levy for the class and by Olwine Connelly for NSMC. The settlement proposal basically tracked the sign-off agreement and provided for, among other things: (1) pro-rata distribution of a settlement fund consisting of 2,050,000 NSMC shares; (2) relinquishment of all claims against NSMC; and (3) assignment to the class of any derivative claims on behalf of NSMC. The Court ordered publication of the proposed settlement and scheduled a hearing on its approval. All class members were notified. The settlement was approved and an appropriate judgment was entered on June 25, 1974, *In re National Student Marketing Litigation*, 68 F.R.D. 151 (D.D.C.1974), from which no appeal was taken.

### The Biegler Counterclaim

Originally, the Bieglers were members of the plaintiff class. However, as a result of extensive pretrial discovery, the named plaintiffs, through class counsel, moved for leave to amend the complaint to join the Bieglers and other Interstate principals as additional defendants on claims under the securities laws.[10] The motion was granted and, in May of 1976, Louis W. Biegler responded by filing a two-count counterclaim against the named plaintiffs and Pomerantz Levy.

The counterclaim marked the first time that the Bieglers expressed any objection to the settlement. The first count purports to be a class action on behalf of former Interstate shareholders who were injured through inadequate representation by class plaintiffs and counsel. Although phrasing the counterclaim in terms of inadequate representation, the Bieglers clearly charge intentional and fraudulent misconduct on the part of the class representatives for their failure to seek rescission of the merger.[11] According to them, rescission would have given Interstate shareholders the benefit of restitution of the Interstate companies, rather than the much less valuable

---

8. Deposition of Louis W. Biegler, Exhibit B to motion of plaintiffs and PLHB for summary judgment (PLHB Exh.), at 539–40; deposition of Cameron Brown, PLHB Exh. 20, at B345; report of Duff, Anderson and Clark, PLHB Exh. 34, at 55.

9. The agreement is referred to as the "sign-off" or "letter" agreement because it is in the form of signed letters sent to NSMC. *See* Exhibit Book to O'Donnell Affidavit of August 1, 1977.

10. The additional defendants are alleged to be liable under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1977); § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a); and for breach of common law fiduciary duties. Several of the claims are brought derivatively on behalf of Student Marketing.

11. *See, e. g.*, Second Amended Counterclaim at ¶ 7A.

pro-rata share of the damage settlement.[12] By foregoing rescission as a remedy, the class representatives assured the inclusion of the substantial Interstate assets in the assets of Student Marketing, thereby making available a much larger pot for both the settlement fund and counsel fees. The Bieglers seek an accounting to determine the damages resulting from the misconduct of plaintiffs and Pomerantz Levy, as well as exemplary damages, costs and attorney fees.

On February 7, 1977, the Bieglers, with leave of the Court, amended their counterclaim to join Student Marketing's counsel, Olwine Connelly, as an additional counterdefendant to the first count. They charge that Olwine Connelly acted in collusion with plaintiffs and class counsel in perpetrating the fraud on the Interstate shareholders and on the Court.[13]

The second count of the counterclaim, brought against the named plaintiffs and Pomerantz Levy, alleges misconduct in joining the Bieglers as defendants. The gist of the charge is that plaintiffs and counsel had in fact decided to join the Bieglers as defendants prior to execution of the sign-off agreement and approval of the settlement, but consciously concealed the intention to sue so as to obtain their acquiescence in the agreement and settlement. As a result of the omission, the Bieglers gave up off-setting defenses to the charges now brought against them by plaintiffs. Actual and exemplary damages, costs and attorney fees, and other relief are sought.

## LEGAL ANALYSIS

In order to clarify the scope and res judicata effect of the Court's decision, initial consideration must be given to the Bieglers' motion for class certification of the first count of the counterclaim. The Court will then discuss the motions for summary judgment filed by plaintiffs, Pomerantz Levy, and Olwine Connelly, since those motions involve issues relevant to the other motions before the Court. Finally, the remaining motions will be considered.

### Motion for Class Certification

■ The Bieglers have moved for class certification of the first count of their counterclaim pursuant to Rule 23(a), (b)(1) and (b)(3) of the Federal Rules of Civil Procedure.[14] The purported class consists of former Interstate shareholders who received NSMC stock through the merger and who suffered damage as a result of the inade-

---

**12.** The Bieglers estimate that inclusion of the Interstate shareholders in the pro-rata damage settlement resulted in the return to Interstate shareholders of one-half cent on the dollar of the value of the corporation. Initial Response in Opposition to Motion of PLHB for Summary Judgment at 6. According to the Bieglers, rescission and restitution of the Interstate companies would have returned the entire value of the corporation to its shareholders.

**13.** Second Amended Counterclaim at ¶¶ 16A–M.

**14.** Rule 23 provides in relevant part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

quate representation afforded by the class representatives. Plaintiffs, Pomerantz Levy, and Olwine Connelly oppose class certification because, inter alia, the Bieglers' early knowledge of the fraud by NSMC makes them subject to defenses which may be inapplicable to the remaining members of the purported class. For reasons more fully discussed in the section on summary judgment, *infra*, the Court agrees and concludes that the Bieglers cannot fairly and properly represent the interests of the class since their individual claims are barred by their failure to seek rescission promptly. Rule 23(a)(4), Fed.R.Civ.P.; *see Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1164–65 (7th Cir. 1974). The motion for class certification of the first count of the counterclaim must be denied.

*Motions for Summary Judgment—The First Count*

The first count of the Biegler counterclaim alleges a right to recover under various legal theories, including common law fraud, violations of the securities laws, and breach of fiduciary duties.[15] The gravamen of their charges, however, is that plaintiffs and class counsel failed to seek rescission of the merger. In response, the plaintiffs and the two law firms contend that, as a matter of law, the Bieglers had no right to rescission of the merger and, accordingly, summary judgment should be granted in favor of the counterdefendants. The Court agrees.

**15.** The theories of recovery under the securities laws are based on the "purchase" by the Bieglers of a share of the settlement fund, consisting of NSMC stock, in exchange for the release of claims against Student Marketing.

**16.** *Johns Hopkins University v. Hutton*, 488 F.2d 912, 915–16 n.12, 917 (4th Cir. 1973), *cert. denied*, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974); *Myzel v. Fields*, 386 F.2d 718, 740–41 n.15 (8th Cir. 1967), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); *Estate Counseling Service v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 303 F.2d 527

■ Rescission is an equitable remedy which must be asserted promptly after discovery of fraud. *McLean v. Clapp*, 141 U.S. 429, 432, 12 S.Ct. 29, 35 L.Ed. 804 (1891). In *Baumel v. Rosen*, 412 F.2d 571 (4th Cir. 1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 681, 24 L.Ed.2d 681 (1970), a leading and frequently cited case dealing with rescission in a securities context, the court stated:

Rescission is a radical move, and the law exacts the election of that course to be asserted without wait. The demand is that advice of the determination be given within a reasonable time after discovery of the ground for rescission.

This principle is stringently administered. Reasonable time is inceptive from the receipt by the rescinder of word putting him on notice. It is then incumbent upon him to pick up the scent and nose to the source. [citation omitted] If the quest confirms the suspicion, then he must make decision with reasonable dispatch. Failing this, entitlement to rescission disappears.

412 F.2d at 574.[16] Promptness is especially required where speculative commodities, such as securities, are involved.

A party could otherwise sit back without notification to the wrongdoer and, within the allowable period to sue, watch the market go up or down, thereby speculating on the success or value at the total risk of the wrongdoer. . . . Although the law does not favor a wrongdoer, neither does it promote speculative damages at his expense.

*Myzel v. Fields*, 386 F.2d 718, 740–41 n.15 (8th Cir. 1967), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).[17]

(10th Cir. 1962); *see* Friedman, *Delay As a Bar to Rescission*, 26 Cornell Law Quarterly 426 (1941).

**17.** *Baumel v. Rosen*, 412 F.2d 571, 575 (4th Cir. 1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 681, 24 L.Ed.2d 681 (1970); *Royal Air Properties, Inc. v. Smith*, 312 F.2d 210, 214 (9th Cir. 1962); *Estate Counseling Service v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, *supra* at 532; *Hickman v. Groesbeck*, 389 F.Supp. 769, 780 (D.Utah 1974); Friedman, *Delay As a Bar to Rescission, supra* at 451.

■ The determination of what constitutes a reasonable time in seeking rescission depends on the particular circumstances of each case.[18] The key inquiry is whether the rescinder acted with due diligence in asserting the equitable remedy. The present record amply demonstrates that the Bieglers did not.

Four days after the merger, Biegler was informed of inaccuracies in the NSMC financials which were used to secure the approval of Interstate shareholders to the merger. On November 4, 1969, he and other former Interstate directors received a signed comfort letter from Peat, Marwick, Mitchell & Co., NSMC's independent accountants, advising that certain adjustments to NSMC's financials were required to make them not misleading. Biegler and the Interstate group met and discussed the letter and the possibility of rescission. During the following week they had further discussions concerning the letter and the possibility of action to void the merger. The consensus of these discussions, however, was to delay any action, in part because NSMC stock was doing well in the market.[19]

Although Biegler insists that he initially believed the inaccuracies to be the result of sloppy accounting practices, he admits that by the end of February, 1970, he knew that dishonesty was involved.[20] Thereafter, meetings were held among the former directors of Interstate and Interstate's counsel, the firm of Lord, Bissell & Brook. Rescission was again discussed and rejected, this time because of the disastrous effect such an action would have on Student Marketing and Interstate.[21] Despite the fact that other companies were reserving their right to rescind their transactions with NSMC, Biegler and the Interstate directors made no such effort.[22]

In November of 1973, Biegler, along with others who held substantial amounts of NSMC stock obtained through mergers, executed the sign-off agreement, the details and results of which led to the settlement and judgment, discussed *supra* at pages 160–161. Neither Biegler nor any other Interstate shareholder objected to the terms of the settlement.

■ In summary, Biegler learned of irregularities in the NSMC financials immediately following the merger. He discussed it with former Interstate directors. By February of 1970 he was aware of dishonesty associated with the inaccurate financials used. These circumstances presented a solid basis for challenging the merger and at that time he was obligated to take prompt and effective action to demand rescission. By failing to assert that remedy until the filing of the present counterclaim in 1975, five years after discovery of the fraud, he has forfeited that right.

Biegler attempts to excuse his failure to act by contending that he was unaware of the possibility of rescinding the merger through the class actions. He alleges that Lord, Bissell & Brook advised him and the other Interstate directors that rescission was unavailable except through another vote of the former Interstate shareholders. He also asserts that since Pomerantz Levy represented the interests of the Interstate shareholders, they should have taken all necessary steps to ensure preservation of that right. Absent such an effort, the firm

18. *See, e. g., Baumel v. Rosen, supra* (18 month delay unreasonable); *Wassell v. Eglowsky*, 399 F.Supp. 1330 (D.Md.1975) (three month delay unreasonable), *aff'd*, 542 F.2d 1235 (4th Cir. 1976); *Fox v. Kane-Miller Corp.*, 398 F.Supp. 609 (D.Md.1975) (one year delay unreasonable), *aff'd*, 542 F.2d 915 (4th Cir. 1976); *Goodman v. Poland*, 395 F.Supp. 660 (D.Md.1975) (one year delay reasonable).

19. Deposition of Louis W. Biegler, PLHB Exh. B, at 487; PLHB Exh. 18, at 484–86.

20. Transcript of hearing on motions for summary judgment, August 8, 1977, at 17–18; Biegler Affidavit No. 6 at ¶ 2.

21. Deposition of Louis W. Biegler, PLHB Exh. B, at 538–40; deposition of Cameron Brown, PLHB Exh. 20, at B344–45; deposition of Donald E. Jeffers, PLHB Exh. 31, at 591–94.

22. *See, e. g.*, NSMC Proxy Statement for October 25, 1972, Annual Meeting of Stockholders, Exhibit G to Delany Affidavit No. 5, at 12.

should at least have informed the shareholders of the necessity for prompt action so they could have intervened to assert rescission on their own behalf.

The arguments are not persuasive. Though inducement by an opposing party not to seek rescission may toll the period of time in which due diligence requires action to be taken,[23] at some point the rescinder must recognize the delaying tactics and promptly assert his right. Friedman, *Delay As a Bar to Rescission*, 26 Cornell Law Quarterly 426, 451–52 (1941). Moreover, it appears that there is a substantial question whether Biegler and the other directors were induced not to act because of the advice from Lord, Bissell & Brook. The firm apparently did not rule out the possibility of rescission altogether, but suggested that such a course would require returning to the shareholders. Although arguments can be made that contacting the former shareholders of Interstate would have been futile or impractical, the discussions of the Interstate directors indicate that the failure to seek rescission resulted not from the difficulties involved, but because of the deleterious effects rescission would have on Student Marketing, NSMC stock and Interstate.

■ Aside from those considerations, the Bieglers clearly cannot rely upon the advice of Lord, Bissell & Brook for the delay from 1970 until 1975 to press their right. They advance no plausible explanation for failing during that period to seek and obtain independent legal advice. As a matter of law, they could not rely upon the advice of Lord, Bissell & Brook as an excuse for their failure to demand rescission.

■ The arguments that plaintiffs and Pomerantz Levy should have preserved rescission must also be rejected. The Interstate directors received information indicating possible fraud when they received the comfort letter from NSMC's accountants. Biegler received that information and by February of 1970, he knew that dishonesty was behind the financials of NSMC. Even though armed with this certain knowledge indicating fraud, he made no attempt to seek rescission. There is nothing to show that the plaintiffs and Pomerantz Levy were aware of the contents of the Peat, Marwick, Mitchell & Co. comfort letter until the filing of the Securities and Exchange Commission complaint in February of 1972. Prior to that time, there is no showing that the class representatives had knowledge of grounds upon which a rescission action could be brought. After receiving the information, the two-year delay prevented rescission. *Cf. Baumel v. Rosen, supra.*[24]

■ Although the Court has determined that the factual issues of the first count of the counterclaim are not in dispute, consideration must also be given to whether sum-

23. Here, the alleged inducement is the advice by Lord, Bissell & Brook that rescission was unavailable. Although that firm was nominally counsel for Interstate, the Bieglers apparently contend that after the merger of Interstate into Student Marketing, the firm's actions were attributable to NSMC, the opposing party in any action by the Interstate shareholders for rescission.

24. Even if plaintiffs and Pomerantz Levy had assumed a duty to the Bieglers at the time the *Garber* and *Lipsig* complaints were filed, there is a substantial question whether a class action for rescission could have been brought, due to the divergent interests of the Interstate shareholders. In *Phillips v. Klassen*, 163 U.S.App. D.C. 360, 502 F.2d 362, *cert. denied*, 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974), former employees of the Post Office Department filed a purported class action charging that they had been coerced into premature retirement. The court of appeals affirmed the district court's denial of class certification, concluding that there was a substantial likelihood of divergent interests among the members of the class, with some wanting to be reinstated and others preferring retirement. In addition, some of the class members would have been subjected to serious economic harm by being required to return a retirement bonus. A similar situation existed with respect to rescission of the Interstate/NSMC merger. While such an action may have been desirable and successful if initiated immediately after the merger, by early 1970 it would likely have driven Student Marketing into bankruptcy. Under those circumstances a substantial portion of the Interstate shareholders would have opposed an action for rescission. The class action necessary to void the merger would therefore have been unavailable. *See Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Phillips v. Klassen, supra.*

mary judgment is appropriate in view of the particular issues involved. Summary judgment may not be justified where the factual issue of due diligence is involved. *Johns Hopkins University v. Hutton*, 488 F.2d 912, 918 (4th Cir. 1973), *cert. denied*, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974); *Goodman v. Poland*, 395 F.Supp. 660, 674 (D.Md.1975).

Here, however, the record amply demonstrates an early awareness of the fraud and a failure to take any action toward rescission. Not only are the facts concerning due diligence undisputed, but in addition, all inferences which could reasonably be drawn from those facts lead inexorably to the conclusion that there was a failure to respond to the problem within a reasonable time. "[W]here the evidence is such that the Court could only permit the issue of due diligence to be resolved by [the finder of fact] in one way, summary judgment may be appropriate." *Grigsby v. Sterling Drug, Inc.*, 428 F.Supp. 242, 243 (D.D.C.1975), *aff'd mem.*, 543 F.2d 417 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977).[25] The Court concludes, as a matter of law, that Biegler failed to act with due diligence in seeking rescission and that plaintiffs and Pomerantz Levy were not required to assert rescission on their behalf.[26] Summary judgment as to the first count must be granted in favor of plaintiffs, Pomerantz Levy and Olwine Connelly.

*Motion for Summary Judgment—The Second Count*

With one significant exception, the facts with respect to the second count of the Bieglers' counterclaim are not in dispute. The motion of plaintiffs and Pomerantz Levy for summary judgment is based on the undisputed fact that Biegler was informed of the possibility that the class representatives were going to join him as an additional defendant in the class action.[27] The Bieglers, however, contend that plaintiffs and class counsel were not simply considering the possibility of suit, but had made a firm decision to join them as additional defendants, yet failed to inform them of that fact prior to execution of the sign-off agreement. According to the Bieglers, it is that omission that led to their acquiescence in the sign-off agreement and settlement, and to their relinquishment of certain off-setting defenses. The Bieglers claim that they ignored the information concerning this possibility, because they thought that once plaintiffs and counsel received the full facts no action would be taken.

The basic issue is whether the distinction between the possibility of suit and its certainty supports the Bieglers' claims against the class representatives. The Court concludes that it does not.

The Bieglers' primary theory of recovery is under the securities laws, specifically § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1977). The alleged omission must therefore be material or, in other words, there must be a substantial likelihood that a reasonable investor would consider it important in making his decision. *TSC Industries, Inc. v. Northway,*

---

**25.** The court in *Grigsby* noted that counsel had conceded that no additional facts bore on the issue of plaintiff's knowledge or diligence. 428 F.Supp. at 243 n.*. While no such concession appears on the record in the present case, the Court observes that the Bieglers were awarded additional time to conduct discovery relevant to the motions for summary judgment, including the issue of the Bieglers' due diligence. The additional discovery, combined with that conducted prior to the filing of the motions for summary judgment, afforded a more than adequate opportunity for the Bieglers to present any indication of due diligence in seeking rescission.

**26.** In their Statement of Genuine Issues, required by local rule 1–9(h), the Bieglers contend that a factual issue exists as to whether Biegler ever decided not to seek rescission. Such a subjective analysis, however, is irrelevant to whether Biegler acted reasonably in not seeking rescission.

**27.** *Compare* Initial Response in Opposition to Motion of PLHB for Summary Judgment at 21–22 *with* PLHB Exh. 7–15.

*Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Here, Biegler was informed of the possibility of suit on or about October 10, 1973, approximately six weeks prior to his execution of the sign-off agreement and fifty days prior to the deadline for opting out of the class. A reasonable investor would not treat such information lightly, especially if defenses to the contemplated action would be lost through acquiescence in the sign-off agreement and settlement. Under the circumstances presented here, the Court concludes that the distinction between being informed of the possibility of suit and the certainty of it is not material as a matter of law.

The contention that Pomerantz Levy violated the Code of Professional Responsibility and its Disciplinary Rules[28] in naming the Bieglers as defendants is not supported by any credible evidence. It is undisputed that the Bieglers were on notice of the action contemplated by the class representatives. Since they admit to being so informed, the Court concludes that summary judgment in favor of plaintiffs and Pomerantz Levy must be granted as to the second count of the counterclaim.

*Motions to Vacate, Disqualify and Intervene*

The Bieglers have moved to vacate the June 25, 1974, judgment approving the settlement of the class action against NSMC. They contend that collusion between Student Marketing and Pomerantz Levy was a fraud on the Court and justifies the requested relief. Fed.R.Civ.P. 60(b).[29] In addition, they request entry of interlocutory judgment against Student Marketing on the class claims due to NSMC's involvement in the alleged fraud on the Court. Their motions to disqualify Pomerantz Levy and other counsel from representing the class and to intervene as plaintiffs in the class actions are also based upon the alleged misconduct of counsel.

According to the Bieglers, at the time of the 1974 settlement class counsel and NSMC counsel represented to the Court that the settlement was fair and in the best interests of the class, when in fact it deprived the Interstate shareholders of their right to rescission of the merger. They point to the settlement itself as proof of collusion, alleging that its terms are so unfair to the Interstate shareholders as to be fraudulent on its face.

As noted, however, the Bieglers lost any right to rescission by their failure promptly to assert their election for that remedy. Further, responsibility for the failure to preserve rescission cannot rest with plaintiffs or Pomerantz Levy. Although it may have been preferable for counsel to address the rescission issue at the time the settlement was approved, the Court concludes that the representations made to the Court in that regard were appropriate since that remedy had been forfeited by failing to seek it promptly.

More important, however, the Bieglers have not presented one piece of credible evidence to support the charge of collusion between NSMC and class counsel. Their assertion that the settlement is fraudulent on its face is totally rejected. This Court considered the settlement carefully and, after hearing from those concerned, found it to be in the best interests of the class. The array of memoranda, affidavits, exhibits and the transcripts of depositions and of hearings generated by the Bieglers' challenge fail to support any of the wide-ranging claims. The motion to vacate the settlement and the related motions to disqualify Pomerantz Levy and other counsel and to intervene as plaintiffs in the class actions must be denied.

---

**28.** The alleged violation by Pomerantz Levy relates to the representation of clients having differing interests. Code of Professional Responsibility, Canon 5. The Bieglers apparently contend that such a violation is tantamount to breach of fiduciary duty.

**29.** Rule 60(b) provides several grounds for relieving a party from a final judgment, order or proceeding and requires that motions urging such relief be filed within a reasonable time. The rule further provides, however, that it does not limit the power of a court to set aside a judgment for fraud upon the court.

*Motions for Security for Costs*

The Bieglers have filed two motions for security for costs with respect to the action by the class against them. They initially moved the Court to require plaintiffs to provide security in the amount of $80,000. After filing their counterclaim against plaintiffs and Pomerantz Levy, they filed a supplemental motion requesting that Pomerantz Levy provide a portion of the undertaking for costs in the action by the class against them.

 The Bieglers have cited no authority, and the Court is aware of none, which supports their request to require Pomerantz Levy, a non-party to the action of the class against the Bieglers, to provide security for costs. The supplemental motion must be denied.

 With respect to the initial motion to require plaintiffs to provide security for costs, the only arguable statutory basis is § 11(e) of the Securities Act of 1933, 15 U.S.C. § 77k(e).[30] Without addressing the question of whether § 11(e) is applicable to the present situation, the Court notes that even if it is, the party seeking security for costs must make a showing that the action is brought in bad faith or is frivolous. *Klepper Krop, Inc. v. Hanford*, 411 F.Supp. 276 (D.Neb.1976); *Linchuck v. Cooper*, 43 F.R.D. 382 (S.D.N.Y.1967). The allegations of bad faith on the part of plaintiffs and Pomerantz Levy are based on the failure to seek rescission of the Interstate/NSMC merger. The Court has considered and rejected those allegations in the discussion above. The initial motion for security for costs from plaintiffs therefore must also be denied.

### CONCLUSION

In their counterclaim, the Bieglers have leveled serious charges concerning the adequacy of representation by plaintiffs and counsel and the integrity of prior proceedings before this Court. After giving careful consideration to the parties' memoranda of law and their supporting affidavits, exhibits and transcripts of testimony, the Court concludes that there is no evidence to support the charges. While it may have been preferable for the class representatives to disclose the unavailability of rescission early in these proceedings rather than in connection with the Bieglers' counterclaim, and indeed, such a course may have obviated the filing of the counterclaim, such an omission cannot form the basis for the Bieglers' charges. Accordingly, the counterclaim must be dismissed. The various motions made by the Bieglers must, for the reasons stated, be denied.

An appropriate order will be entered.

---

**30.** 15 U.S.C. § 77k(e) provides in relevant part: In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees . . . . .