John W. PORTER, Trustee for Irene B. Porter, Roy W. Kilpatrick, Jr., Trustee for Dorothy B. Kilpatrick, Appellants,

v.

Charles L. BARNHOUSE III and Robert S. Barnhouse, Appellees.

No. 83–1213.

Supreme Court of Iowa.

July 18, 1984.

John J. McLaughlin and W. Don Brittin, Jr. of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellants.

Garold F. Heslinga of Heslinga & Heslinga, P.C., Oskaloosa, for appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McGIVERIN, and CARTER, JJ.

CARTER, Justice.

Plaintiffs-limited partners and defendants-general partners both appeal from the district court judgment in a declaratory judgment action establishing their respective interests upon dissolution of the partnership.

The action was commenced by John W. Porter and Roy W. Kilpatrick, Jr., who, as trustees of separate irrevocable *inter vivos* trusts, were limited partners in the C.L. Barnhouse Company. A third limited partner, Irene Barnhouse, is not a party to the action. Hereafter, unless otherwise indicated, reference to limited partners identifies only the plaintiffs. The defendants in the declaratory judgment action are the general partners in the partnership. The action seeks a judicial resolution of the dispute that has arisen between the limited partners and the general partners with respect to the date upon which the partnership was dissolved and the interest of the limited partners on dissolution.

The C.L. Barnhouse Company was founded in 1886 and has been engaged in the publication of music in Oskaloosa, Iowa since that time. It specializes in the publication of band music. All of the parties in their individual capacities are lineal descendents of the founder of the company.

The business has existed in various forms. Initially, it was a sole proprietorship. From 1940 until 1956, it was a general partnership. From 1956 until the present dispute arose, the business has been cast in the form of a series of limited partnerships.

The trusts of which plaintiffs are the trustees were created by trust agreements executed June 15, 1956, by settlors, Dorothy B. Kilpatrick and Irene B. Porter, the daughters of C.L. Barnhouse and are the mothers of the plaintiffs·trustees in the present action. The original assets of the trusts were the respective one-quarter interests of the settlors in the C.L. Barnhouse Company, which, at the time the trusts were created, was a general partnership.

On July 1, 1956, the trustees of the two trusts each became limited partners in the C.L. Barnhouse Company. The investment which they made at that time consisted of their existing one-quarter interests in the prior general partnership. The limited partnership of July 1, 1956, was dissolved on October 14, 1967, as a result of the death of one of the general partners.

A new limited partnership was formed effective January 1, 1968, and a written agreement of limited partnership was executed on February 23, 1968. Irene S. Barnhouse and the two trustees were each made limited partners under the new limited partnership agreement. The contribution each made in order to attain that status was their respective interest in the prior limited partnership. The defendants in the present action were named as the only general partners under the February 23, 1968 agreement.

Paragraph eighteen of the February 23, 1968 partnership agreement provided:

18. Upon the termination of the partnership, a full and accurate inventory shall be prepared, the assets, liabilities, income, both gross and net, shall be ascertained, the debts of the partnership shall be discharged, the capital contributions of the partners, if not otherwise returned, shall be returned, and the remaining moneys, assets and properties of the partnership shall be divided among the partners in the proportions provided in Paragraph 6 hereof; provided, that in settling accounts upon dissolution, the liabilities of the partnership shall be paid in the order prescribed by Section 545.2 of the 1966 Code of Iowa.

Paragraph six of the partnership agreement provides as follows:

6. The capital to be contributed by the parties shall consist of their respective interests in the capital of the old limited partnership having a stated book value of $36,000.00 as shown by the books of said partnership as of January 1, 1968, which contributions of capital are hereby acknowledged to be made by the parties in values and fractional shares as follows:

| Name | Amount | Share |
|---|---|---|
| Charles L. Barnhouse III | $4,500.00 | 1/8 |
| Robert S. Barnhouse | 4,500.00 | 1/8 |
| Irene S. Barnhouse | 9,000.00 | 1/4 |
| R. V. Porter, Trustee For Irene B. Porter, Et Al, Under Agreement Dated June 15, 1956 | 9,000.00 | 1/4 |
| Roy W. Kilpatrick, Trustee For Dorothy B. Kilpatrick, Et Al, Under Agreement Dated June 15, 1956 | 9,000.00 | 1/4 |

Other significant provisions of the partnership agreement include the following paragraphs:

8. The contributions of the limited partners are to be returned to them upon the dissolution or termination of the partnership, but only after all liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them.

9. The net profits derived from the operation of the partnership business, after deducting all expenses of operation, including compensation for personal services rendered by the general partners, shall be divided among and/or credited to the partners, both general and limited, in proportion to their respective contributions to the capital of the partnership as hereinafter set forth:

. . . .

10. Losses suffered or incurred in the conduct of the business of the partnership shall be borne by all of the parties hereto in the same proportions in which they are entitled to share in the profits of the partnership as provided, however, that no limited partner shall in any event be liable for or subject to any loss whatsoever in excess of his interest in the net worth of the partnership.

. . . .

17. The partnership shall terminate upon the retirement, death or insanity of, or upon the sale or other disposition of

any part of the interest of, any of the partners, either general or limited.... The partnership agreement further provided that in consideration of the general partners devoting their time and efforts to the business of the partnership they were to be paid certain specified salaries and bonuses.

The limited partnership created by the agreement of February 23, 1968, was thereafter renewed for successive five-year periods, the last of which would have ended on December 31, 1982. On December 7, 1981, Dorothy B. Kilpatrick died, an event which triggered the termination of the Kilpatrick trust. Two days later, the defendants gave written notice to the plaintiffs that under paragraph seventeen of the partnership agreement the partnership was dissolved as of the date of Dorothy B. Kilpatrick's death. They further advised plaintiffs that they did not desire to form a new partnership and would cause the company accountant to compute the interests of the limited partners upon dissolution.

The plaintiffs, on February 15, 1982, advised the defendants that they did not believe the death of Dorothy B. Kilpatrick dissolved the partnership and further advised them that in the event of liquidation paragraph eighteen of the partnership agreement provides the method of determining their interests. On April 27, 1982, defendants notified plaintiffs that they still contended the partnership had terminated upon Dorothy B. Kilpatrick's death and further that "[s]ince January 1, 1982, this business has been run with a new set of books, different identification numbers and as a partnership of Robert and Charles Barnhouse."

Following a trial to the court, the district court found and concluded that the death of the settlor had terminated the limited partnership as of that time and that each of the plaintiffs thereupon became entitled to return of their capital contributions, an accounting of the extent of their proportionate share of the income earned before the death of the settlor and one-fourth of the market value of all net partnership assets, except goodwill. A provision in the district court's decree provided for binding appraisal in the event the parties could not agree on the net market value of the assets for purposes of determining the plaintiffs' respective distributive shares.

Both parties have appealed from the district court's decree. The plaintiffs contend that the district court should have declared that the partnership was not dissolved until December 31, 1982, required defendants to account for profits generated by partnership assets after Dorothy B. Kilpatrick's death, and awarded plaintiffs a distributive share in the goodwill of the partnership. The defendants contend that the limited partners were entitled only to the return of their investment based upon a book value of their interest as of the date of Dorothy B. Kilpatrick's death.

Additional facts not previously set forth will, where appropriate, be discussed in connection with our consideration of the substantive legal issues presented by the appeal.

I. *Time of Dissolution of the Partnership.*

The first issue which we consider concerns the time at which the partnership was dissolved. The defendants contend and the trial court found that this occurred on December 7, 1981, the date of Dorothy B. Kilpatrick's death. The plaintiffs urge that neither her death nor the resulting termination of the Kilpatrick trust was an act which caused dissolution of the partnership. If that claim is correct, the partnership would not have been dissolved until December 31, 1982, at the expiration of the final five-year renewal period.

Paragraph seventeen of the partnership agreement provides that the partnership shall terminate upon "death or insanity of, or upon the sale or other disposition of any part of the interest of, any of the partners, either general or limited." Plaintiffs urge that Dorothy B. Kilpatrick's death did not terminate the partnership under paragraph seventeen because she was neither a general nor a limited partner. While this is correct, it appears without dispute that her

death was an event which, under the trust instruments, worked the termination of the Kilpatrick trust requiring distribution of all trust assets (including the interest of the limited partner). Under paragraph seventeen, disposition of any part of the interest of a limited partner is an act which triggers termination of a partnership.

█ Plaintiffs seek to avoid a finding that the partnership was terminated by the trustee's obligation to distribute trust assets by urging that no distribution of those assets in fact took place before December 31, 1982, the date upon which the partnership would otherwise end. They note in this regard that under the rules espoused in *Restatement (Second) of Trusts* §§ 88(2), 345 (1959), title to trust assets remains in the trustee until the assets are distributed to the beneficiaries. We find these arguments to be unpersuasive.

The *res* of the trust at issue in the present case consisted of the limited partner's interest upon dissolution of the partnership. Until that interest was ascertained and distributed to the trustee by the partnership, no distribution of trust assets was possible. Under the interpretation posed by the plaintiffs, the trustee would be frustrated in his efforts to perform his fiduciary duty. We believe that the dilemma posed by the trustee's obligation to distribute trust assets is sufficiently similar to the obligation of a personal representative upon death of a partner that the two situations were intended to lead to the same result under paragraph 17 of the partnership agreement.

As an alternative argument, the plaintiffs urge that, even if the death of Dorothy B. Kilpatrick would otherwise have caused the dissolution of the partnership, failure to file a certificate of cancellation in accordance with Iowa Code sections 545.44 and 545.50 resulted in continuation of the partnership until its expiration on December 31, 1982. Section 545.50 provides that a certificate is not cancelled until there has been filed for record in the office of the county recorder an appropriate document. This statutory provision was not complied with prior to December 31, 1982. Nevertheless, we conclude that the plaintiffs are not aided as a result of such failure.

The statutory requirement for filing a certificate of cancellation under section 545.44 is a corollary to the requirement for filing a certificate of limited partnership under section 545.2. It is designed to protect third parties dealing with the partnership. For this reason, several courts which have considered the issue have concluded that such filing requirements are designed for the protection of third parties and do not affect the rights of the limited and general partners *inter se. Heritage Hills v. Zion's First National Bank*, 601 F.2d 1023, 1026 (9th Cir.1979) (applying Arizona law); *Betz v. Chena Hot Springs Group*, 657 P.2d 831, 834 (Alaska 1982); *Hoefer v. Hall*, 75 N.M. 751, 411 P.2d 230 (1965), *reh'g denied*, 75 N.M. 756, 411 P.2d 233 (1966); *Riviera Congress Associates v. Yassky*, 25 A.D.2d 291, 268 N.Y.S.2d 854 (1966); *Holvey v. Stewart*, 265 Or. 242, 509 P.2d 17 (1973); *Garrett v. Koepke*, 569 S.W.2d 568 (Tex.Civ.App.1978).

█ We find these cases to be persuasive and hold that failure to file a certificate of cancellation does not extend the date of termination for purposes of determining the rights of the parties to the present appeal. The trial court was correct in finding that dissolution of the partnership occurred on December 7, 1981.

In order to avoid any problems which might arise from the use of a fractional fiscal year, the plaintiffs have conceded that, if Dorothy B. Kilpatrick's death did terminate the partnership, dissolution shall be considered to have occurred on December 31, 1981, rather than December 7, 1981. We therefore direct that the district court use the latter date for purposes of further proceedings in the accounting between the parties.

II. *Financial Entitlements of Limited Partners Upon Dissolution.*

Both the plaintiffs-limited partners and the defendants-general partners urge on

appeal that the district court erred in its determination of the interest to be distributed to the limited partners on the dissolution of the partnership.

A. *Distribution to limited partners upon dissolution under terms of partnership agreement.* With the exception of the issue of post-dissolution profits, the claims concerning the plaintiffs financial entitlement on dissolution center on interpretation of the partnership agreement. Defendants on their cross-appeal contend that, under paragraph 18 of that agreement, plaintiffs are only entitled to a return of their capital contributions "in the properties provided in paragraph 6." From this premise, defendants urge that because paragraph 6 indicates that plaintiffs capital contributions are a stated proportion (one-fourth for each plaintiff) of a fixed book value of $36,000, plaintiffs are each entitled to only $9000.

█ We conclude that paragraph eighteen of the partnership agreement, if accorded its plain meaning, provides that in addition to return of all partners capital contributions, both general and limited partners also have the right to a proportionate one-fourth share of the value of "remaining moneys, assets, and properties." The trial court's interpretation of this aspect of the agreement was correct. In so holding, we reject defendants' alternative argument that paragraph eighteen cannot be enforced because its terms are not incorporated in the certificate of limited partnership filed as a public record. As noted in the prior division, such requirements are for the benefit of third parties.

The trial court excepted from the value of the "remaining moneys, assets and properties" in which the plaintiffs are to share the goodwill of the business. It based these conclusions involving goodwill on the decision of *Vanderplow v. Fredricks,* 321 Mich. 483, 32 N.W.2d 718 (1948), which speaks of goodwill being "attributable" to the general partners. The plaintiffs in the present case contend that contrary to the rationale of *Vanderplow,* the goodwill of the C.L. Barnhouse Company antedated the

limited partnerships and was included in each limited partners' initial capital contribution to the company. The 1956 capital contributions of the limited partners were, as previously noted, their respective one-fourth interests in the prior general partnership.

Based upon the history of the acquisition of goodwill by the company, we find the rationale of *Vanderplow* is inapposite. The phrase "remaining moneys, assets and properties" employed in paragraph eighteen is sufficiently broad to include all assets of the business, both tangible and intangible. While paragraph eighteen does not contemplate continuation of the business, it does not prohibit such continuation. Under the circumstances of the present case, the value of goodwill should be considered in determining the withdrawing limited partners' distributive share in the same manner as if the goodwill had been purchased by the continuing general partners for its reasonable present value at the date of dissolution. Accordingly, we find the trial court erred in not including goodwill among the assets to be valued in determining the extent of plaintiffs' distribution.

B. *Post-Dissolution profits.* Plaintiffs also urge on appeal that as noncontinuing partners they are entitled to elect between receiving interest on their entitlement at the legal rate from the date of dissolution or an accounting for the profits generated by use of their assets in the business since that time. In asserting this claim, plaintiffs rely upon the following rule contained in 1 R. Rowley, *Rowley on Partnership,* section 42 at 805–06 (2d ed. 1960):

> The general rule is, where the business is carried on after dissolution without any settlement of accounts and without any specific agreement, the outgoing partner or his estate, upon an accounting, are entitled to receive the value of his interest in the firm as of the date of dissolution, and have in addition an option to take either interest at the legal rate thereon, or a share of the profits earned thereafter.

The foregoing rule is recognized and applied in Iowa Code section 544.42 (1981) and was a common-law principle recognized in *Fleming v. Fleming*, 211 Iowa 1251, 1271–72, 230 N.W. 359, 368 (1930) prior to enactment of that statute.

■ While we believe the rule upon which plaintiffs rely is applicable to partnerships in this state, we conclude that it does not apply to the return of the interest of limited partners. Plaintiffs cite no authority indicating applicability of the rule to the rights of limited partners. Moreover, the rationale of the rule suggests that it is inapposite to the situation of a limited partner.

In A. Bromberg, *Crane and Bromberg on Partnership*, section 86(c) at 495–97 (1968), the author suggests that the election to receive a share of the post-dissolution profits is to compensate the withdrawing partner for (a) exposure to additional liability through the continuing partners' apparent authority and (b) as compensation for the use of the outgoing partner's assets in the conduct of the business. We conclude that neither of these reasons applies to the situation of a limited partner. A limited partner has no continued exposure to additional liability through the continuing partners' apparent authority except to the extent of the limited partner's capital contribution. In addition, the limited partner does not have a property interest in the assets, as such, used in the continuation of the business.

The latter point is discussed in 2 R. Rowley and D. Sive, *Rowley on Partnership*, section 53.18 at 582–83 (2d ed. 1960), where it is stated:

A limited partner is not the owner of the property of the firm. The distinction, under the Uniform Limited Partnership Act, between the interest of a limited partner and that of a general partner, in the property of the firm has been clearly described and explained: "To be sure, the statute says that a limited partners

'interest' in a partnership is personal property.... But when the sections of the statute dealing with the rights of a general partner are examined, it is found that they employ language markedly different than that which delineates the right of a limited partner.... [T]hose sections do not talk about the right of a general partner 'to receive' his profits or contribution, but of the interest of that partner '*in* specific partnership property...'"

This principle has also been recognized in Bromberg, *Partnership Dissolution—Cause, Consequences, and Cures*, 43 Tex. L.Rev. 631, 640 (1965) where it is stated:

[A] limited partner is not a "partner" for most statutory purposes. The ULPA includes both general and limited partners as "members," thereby implying that limited partners are something less than "partners." This is consistent with the very restricted role permitted limited partners, and was emphasized by the draftsmen *dehors*.[1]

(Footnotes in original omitted.)

■ The interest of a limited partner following dissolution is that of a creditor rather than an owner. As recognized in N. Lattin, *The Law of Corporations* § 7 at 42 (1971):

If no priorities among special partners have been set up in the [agreement], ... they share in the partnership assets in respect to their claims for capital and in respect to their claims for profits or for compensation by way of income on their contributions respectively, in proportion to the respective amounts of such claims.

This is the general import of Iowa Code section 545.42. We do not find that plaintiffs' right to share in post-dissolution profits is aided as a result of their contractual right under paragraph 18 of the agreement to share in the value of the assets upon dissolution. They were not entitled to lay claim to specific assets.

1. In a Commissioners' Note found in 8 Uniform Laws Ann. at 4 (1922): It is provided "[T]he person who contributes the capital, though in accordance with custom called a limited partner, is not in any sense a partner."

■ Any claim by plaintiffs that their agreement to a continuation of the business by the general partners while the litigation progressed was conditional loses its significance under this rationale. They were in no position to prevent it except by traditional creditors' remedies. Because there are no identifiable assets in which the plaintiffs share ownership that were used in the post-dissolution business, they are not entitled to share in the post-dissolution profits. Instead they are entitled, as the trial court found, to interest at the legal rate from the date of dissolution on the amount owed them.

### III. Amount of Bonuses Paid General Partners for Year Ending December 31, 1981.

The plaintiffs also contend on appeal that the general partners acted improperly in paying themselves bonuses equal to seven percent of net operating profits for the year ending December 31, 1981. They posit this contention on paragraph eleven of the partnership agreement which provides that compensation of a general partner shall be determined by all partners. It has been the practice in the operation of the business that all partners, including limited partners join in the decision as to the extent of the bonus to be paid to the general partners. In 1977, it was agreed among all partners, including the limited partners, that for 1977 and each year thereafter, a bonus of five percent of the net operating profit of the company would be paid the general partners. The general partners, acting without consent of the limited partners, took a bonus of seven percent of the net operating profit of the company for the year ended December 31, 1981.

■ On appeal, the defendants-general partners seek to sustain their action with respect to these bonuses on a common-law right to make management decisions. We conclude that any such common-law right is superseded in the present case by the specific terms of the partnership agreement and the prior practice of the parties in carrying out that agreement. See, e.g.,

Wolf v. Murrane, 199 N.W.2d 90, 97 (Iowa 1972). On remand, the trial court shall require the general partners to account for the portion of their bonuses for the year ending December 31, 1981 which exceeded five percent of the net operating profit of the company.

### IV. Authority of Court to Order Binding Appraisal on Valuation Issues.

■ Finally, we consider the plaintiffs' contentions on appeal that the district court was without authority to require that the parties submit any unresolved valuation issues remaining in the case following the entry of the declaratory judgment to binding appraisal. We cannot approve that practice and find no authority under which to sustain it.

Such binding appraisal would not be subject to any recognizable form of judicial review and would force the parties to submit to a procedure not established by law or contained in any agreement between them. Resolution of the valuation questions which are presented is a proper subject for supplemental relief from the court under rule 266 of the Iowa Rules of Civil Procedure. If the court is in need of assistance in determining these issues, it may consider the use of rules 207–214 of the Iowa Rules of Civil Procedure which relate to appointment of a master. By referring to these rules, we do not suggest that such procedure need be resorted to in the present case. We merely hold that any remaining valuation issues shall upon remand be determined by the court either directly or by use of a master under rules 207–214.

The decree of the district court is reversed with respect to issues relating to the value of goodwill, the 1981 bonuses, and the requirements for binding appraisal. Said decree is affirmed in all other respects, and the case is remanded for further proceedings on the valuation issues.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.