David H. FLECK and Carol L.
Couchenour, Plaintiffs,

v.

CABLEVISION VII, INC., Heritage Com-
munications, Inc., and Tele–Communi-
cations, Inc., Defendants.

Civ. A. No. 90–1041 SSH.

United States District Court,
District of Columbia.

April 10, 1991.

Douglas V. Rigler, Bruno A. Ristau, Joel E. Leising, Herbert E. Milstein, Andrew N. Friedman, Gary E. Mason, Washington, D.C., for plaintiffs.

Carter G. Phillips, Mark D. Hopson, Nancy A. Temple, Sidley & Austin, Washington, D.C., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on three motions: plaintiffs' motion for class certification, defendants' motion to dismiss counts II and III of the amended complaint, and defendants' motion for an extension of time in which to respond to count I. Upon consideration of the motions, the parties' oppositions and replies, and the entire record herein, the Court denies plaintiffs' motion for class certification, denies defendants' motion to dismiss, and grants defendants' motion for an extension of time.

### Background

This action arises out of the purchase of a limited partnership's assets by the general partner. Defendant Cablevision VII, Inc. (Cablevision or the General Partner), was the general partner in Cablevision Associates VII (the Partnership), an Iowa limited partnership that acquired and operated cable television systems. Cablevision VII is a wholly-owned subsidiary of defendant Heritage Communications (Heritage) which, in turn, is a wholly-owned subsidiary of defendant Tele–Communications, Inc. (TCI).

Plaintiffs David H. Fleck and Carol L. Couchenour jointly owned five interests in the Partnership which they inherited from their father, Harold J. Fleck. Harold Fleck purchased the interests during the initial limited partnership offering in 1983. The interests were offered through a prospectus for $1,000.00 each with a five-interest minimum per investor.[1] The prospectus indicated that the Partnership was established to "acquire, construct or improve, develop and operate cable television systems." The status of limited partner offered investors the opportunity to share in the Partnership's profits without participating in its management and with limited liability. The investment also offered potential tax advantages through passive activity losses. To ensure that the limited partners would qualify for the tax advantages, the Partnership required investors to warrant that they had sufficient income and net worth to make the investment appropriate.

The prospectus highlighted several aspects of the Partnership Agreement (Agreement) and included a copy of the Agreement as an attachment. The Agreement detailed the rights and obligations of the parties and authorized the General Partner to "exercise any and all other rights and powers of general partners of limited partnerships organized under the laws of the state of Iowa." The Agreement also included a general choice of law provision specifying Iowa law to govern the relationship of the parties.

---

1. The prospectus was part of a registration statement that the Partnership filed with the Securities and Exchange Commission (SEC) on June 23, 1983, pursuant to the Securities Act of 1933.

Because the limited partnership interests were sold through a public offering, the Partnership was required to file annual and quarterly reports with the SEC.

Section 9.5 of the Agreement provided two procedures by which the Partnership could sell its assets to the General Partner.[2] The first procedure required the approval of "the limited partners holding at least a majority of the Interests then outstanding." The second procedure did not require the limited partners' approval if the General Partner provided consideration "not less than the greater of (i) the highest acceptable bid in a public bidding process ... and (ii) the average of three separate independent appraisals of such Systems and Franchises." The Agreement did not provide a direct mechanism for the General Partner to purchase the limited partners' interests rather than the Partnership's assets. However, the Agreement did allow amendment "to the extent permissible under applicable partnership law" by the affirmative vote of the limited partners owning a majority of the interests. The amendment provision specifically anticipated amendment in the context of a sale of the Partnership's assets and reiterated that the limited partners' approval was necessary for such a transaction.

The Partnership began acquiring cable television systems in May 1984 and eventually owned and operated six cable systems in Iowa and one in Colorado. In 1987, Cablevision's parent corporation, Heritage, merged with TCI and became a wholly-owned subsidiary. Heritage then divested most of its non-cable television operations and began to explore ways to increase its ownership interest in the cable systems owned by its subsidiary limited partnerships. In the case of the Cablevision VII partnership, Heritage concluded that an offer to purchase the limited partners' interests would suit its objectives.[3] Accordingly, the General Partner sent the limited partners a consent statement on November 21, 1988, announcing a special meeting 21 days later on December 12, 1988. The consent statement proposed amending the Partnership Agreement to allow the General Partner to purchase the limited partners' interests. If a majority of the interests not affiliated with Heritage approved the amendment, the limited partners would then vote on the proposed terms of the sale.

The consent statement detailed the terms of the proposed sale and included 11 attachments: the Partnership Agreement, an appraisal of the value of the systems by Malarkey–Taylor Associates, a fairness opinion letter from Shearson Lehman Hutton, Inc., opinions of legal counsel, and the Partnership's most recent annual and quarterly reports. The General Partner estimated the cable systems to be worth $61,244,200.00. The proposal deducted from that amount the Partnership debts, adjustments to working capital, and the expenses of the sale, to reach the sale price for the limited partners' interests. In addition, the consent statement included disclosure provisions regarding the General Partner's fiduciary relationship to the limited partners, the conflicts of interest inherent in the sale, and the consequences of the sale to the limited partners and the General Partner. Finally, the General Partner specifically disclosed that it had not solicited offers to purchase the systems and that structuring the transaction as a tender offer might have produced a higher sale price for the limited partners.

At the meeting on December 12, 1988, 3,757 of the 5,078 non-Heritage limited partner interests voted on the proposed amendment. Approximately 97% of the interests that voted approved both the amendment and the transaction. Plaintiffs did not vote. The sale was consummated and the limited partners were paid $4,232.47 per interest, a return in excess of 400% in five years on their original investment of $1,000.00 per interest.

**2.** The Partnership's assets consisted of cable television franchises and systems.

**3.** Defendants state in their motion to dismiss that Heritage felt that the sale also offered advantages to the limited partners. The 1986 Tax Reform Act had minimized tax credits for passive activity losses and, therefore, reduced the tax benefits of the limited partnership investments. The sale enabled the limited partners to realize the appreciation of their investments and to pay income taxes on the capital gains at a lower rate than the rate in effect when the investments had generated tax deductions.

Plaintiffs filed this action seeking a declaratory judgment that the General Partner violated the Securities Exchange Act and breached its fiduciary duty in connection with the sale. Count I of the complaint alleges violations of sections 10(b), 14(a), 14(e) and 20(a) of the Securities Exchange Act and Rules 10b–5 and 14a–9 thereunder. Counts II and III assert pendent state law claims for breach of fiduciary duty. In count II, plaintiffs claim that the General Partner breached its fiduciary obligation to obtain "the highest possible price a purchaser would pay" for the limited partners' interests. In Count III, plaintiffs claim that deducting the costs of the transaction from the purchase price constituted a breach of fiduciary duty. Defendants filed a motion to dismiss counts II and III for failure to state a claim and filed a motion to extend the time to respond to count I until the Court rules on the motion to dismiss.

## Discussion

### A. Plaintiffs' Motion for Class Certification

■ Plaintiffs have moved for an order under Fed.R.Civ.P. 23 certifying their claim as a class action on behalf of all the limited partners of Cablevision Associates VII as of November 21, 1988. A trial court may certify a class action only if it is satisfied "after a rigorous analysis, that the prerequisites of Rule 23(a) have been met." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Rule 23(a) establishes four prerequisites: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties

are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In addition, the claim must fall within one of three categories under Rule 23(b). Plaintiffs rely on Rule 23(b)(3), which provides that an action is appropriate for class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

■ Defendants do not contest that plaintiffs' claim meets the numerousness requirement of Rule 23(a). Defendants argue that plaintiffs have failed to show that their claims are typical of the class and that common questions of law or fact predominate.[4] The typicality requirement "screen[s] out class actions when the legal or factual position of the representatives is markedly different from that of other members, even though common issues of law or fact are raised." *Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453 (D.D.C.1984), *aff'd*, 796 F.2d 508 (D.C.Cir. 1986);[5] *see Pendleton v. Schlesinger*, 73 F.R.D. 506 (D.D.C.1977), *aff'd, Pendleton v. Rumsfeld*, 628 F.2d 102 (D.C.Cir.1980). The requirement ensures that "the interests of the class members will be fairly and adequately protected in their absence."[6] *General Telephone*, 102 S.Ct. at 2370 n. 13. A claim is not typical when "the representative parties are subject to unique defenses" or when "it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff." *Kas*, 105 F.R.D. at 461 (citing *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334

---

**4.** Although defendants specifically challenge the typicality of plaintiffs' claims, their arguments also go to the commonality requirement. *See General Telephone*, 102 S.Ct. at 2370 n. 13. ("The commonality and typicality requirements of Rule 23(a) tend to merge.")

**5.** In affirming the district court's decision in *Kas*, the court of appeals expressly declined to reach the merits of the class certification portion of the case.

**6.** The typicality requirement also bears upon Rule 23(a)'s fourth requirement, the adequate representation requirement. That requirement, however, also addresses the competency of the class counsel and possible conflicts of interest within the class. *General Telephone*, 102 S.Ct. at 2370 n. 13. Defendants do not challenge the competency of plaintiffs' counsel in any way, therefore, the Court does not address the adequate representation requirement.

(N.D.Ill.1982)); *see also Irvin E. Schermer Trust v. Sun Equities Corp.*, 116 F.R.D. 332, 336–37 (D.Minn.1987) (named plaintiffs subject to unique defense of unjustified reliance); *Rodriguez v. Dep't of Treasury*, 108 F.R.D. 360, 363–64 (D.D.C.1985) (plaintiff subject to unique defense of failure to exhaust administrative remedies in employment case); *In re Nat'l Student Mktg. Litig.*, 445 F.Supp. 157, 162–63 (D.D.C. 1978) (plaintiffs' failure to act promptly raised unique defense to action for rescission of securities transaction), *aff'd*, 663 F.2d 178 (1980); *Zenith Laboratories, Inc. v. Carter–Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir.) (named plaintiff subject to unique defenses including res judicata), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976).

Plaintiffs contend that their claims arise from a course of conduct directed at the entire class, and, therefore, that their claims are typical of all the class members' claims. Plaintiffs point out that all the class members received the identical consent statement and that the General Partner paid the same price for all the limited partnership interests. Therefore, plaintiffs reason, their claims are typical with regard to the issues of disclosure and the adequacy of the purchase price. Defendants argue that plaintiffs' securities claims are not typical of the class members' claims for two reasons. First, defendants note that plaintiffs obtained their interest through inheritance rather than buying it through the initial offering, as the vast majority of the purported class members did. Defendants argue that this distinction renders plaintiffs' claims atypical on the issue of the materiality of the alleged misstatements and omissions. Second, plaintiffs did not vote on the amendment to the Agreement or the sale, unlike 70% of the class members. For this reason, plaintiffs are subject to a unique defense on the issue of reliance.

The origin of plaintiffs' limited partnership interest may affect the issue of materiality. To prevail on a claim of securities fraud, a plaintiff must demonstrate a misstatement or omission concerning a material fact. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988) (Rule 10b–5); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 2132–33, 48 L.Ed.2d 757 (1976) (Rule 14a). The Supreme Court has applied a "reasonable investor" standard to determine what facts are material. *Basic*, 108 S.Ct. at 983; *TSC*, 96 S.Ct. at 2132–33. That standard is not completely objective in nature, as it takes into consideration the "total mix" of available information. *Id.* Plaintiffs did not purchase their interest pursuant to the offering prospectus, therefore, the total mix of information available to them may have differed from that available to the rest of the class. *Id.* Plaintiffs' unique position affects their ability to demonstrate the scope of disclosure. A material fact may have appeared in the prospectus but not in the consent statement. Because plaintiffs did not receive the prospectus, they cannot attest to the full scope of disclosure that the majority of the class received.[7]

Plaintiffs' claim also does not satisfy the typicality requirement, because plaintiffs face a unique defense on the issue of reliance.[8] The Supreme Court has held that there is a rebuttable presumption of re-

---

7. Plaintiffs argue that their claim challenges the consent statement and that earlier disclosures in the prospectus are not relevant. This simply underscores the fact that plaintiffs' position is not typical of the class. Plaintiffs did not have the prospectus, therefore, they cannot be charged with knowledge of its contents. However, the majority of the class members cannot claim nondisclosure of facts that the prospectus contained. Likewise, those that read the prospectus cannot claim reliance on any misstatements in the consent statement.

8. In their reply, plaintiffs protest that the Court should not examine the merits of their claim at

the class certification stage. In considering the elements of plaintiffs' claims and the likely defenses plaintiffs face, the Court is not prejudging the merits. The Court properly may compare plaintiffs' factual position with that of the other class members in the context of the law to determine whether plaintiffs satisfy the typicality requirement. *Cf. Hoffman Electric, Inc. v. Emerson Electric Co.*, 754 F.Supp. 1070 (E.D.Pa. 1991) (district court may not consider nonreliance at the class certification stage because it is an affirmative defense bearing on the merits).

liance on a material misstatement or omission under Rule 10b–5. *Basic,* 108 S.Ct. at 990–91.[9] Even if plaintiffs can show a material misstatement in the consent statement, defendants may be able to rebut the resulting presumption of reliance because plaintiffs did not vote on the transaction. Several courts have denied class certification in securities actions when the proposed class representatives were subject to special reliance issues. *See, e.g., In re Bexar County Health Facility Dev. Corp. Sec. Litig.,* 130 F.R.D. 602, 611 (E.D.Pa.1990) (class certification denied because plaintiffs failed to read the challenged offering circular); *Kas,* 105 F.R.D. at 459 (class certification denied because plaintiffs did not vote on challenged transaction); *Kline v. Wolf,* 702 F.2d 400, 403 (2d Cir.1983) (class certification denied because evidence sufficient to rebut presumption of reliance as to plaintiffs in case involving "fraud on the market theory"). In *Kas,* this court denied class certification in light of facts similar to those presented in this case. *See Kas,* 105 F.R.D. at 461–62 (Judge Johnson). The plaintiffs in *Kas* did not vote in favor of the challenged merger, unlike a majority of the class members. The *Kas* court concluded that the plaintiffs' claims were not typical of the class members' claims because those plaintiffs faced a defense on the issue of reliance that would not apply to other members of the proposed class. *Id.* Plaintiffs' failure to have voted on the proposed amendment and transaction in this case (although they could have) poses a similar bar to class certification.

## B. Defendants' Motion To Dismiss Counts II and III

■ Defendants have moved to dismiss counts II and III of plaintiffs' complaint pursuant to Rule 12(b)(6). Counts II and III set forth pendent claims for breach of fiduciary duty. Pursuant to the Partnership Agreement, Iowa law governs the relationship between the General Partner and the limited partners. *See NRM Corp. v. Hercules, Inc.,* 758 F.2d 676, 681 n. 13 (1985) (contractual choice of law provision is enforceable provided choice bears a substantial relation to the parties and the transaction); *Gray v. American Express Co.,* 743 F.2d 10, 16–17 (1984) (same). Defendants contend that the allegations in counts II and III, which are premised on defendants' failure to obtain "the highest possible price" for the limited partners' interests, do not state a claim for breach of fiduciary duty under Iowa law.

Dismissal for failure to state a claim is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Baker v. Director, United States Parole Comm.,* 916 F.2d 725 (D.C.Cir.1990). To decide a motion to dismiss, the court must accept the factual allegations of the complaint as true. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 288, 50 L.Ed.2d 251 (1976). Rule 8 abolishes technical forms of pleading and calls for liberal construction of all pleadings. Thus, defendants' motion presents the question whether the facts alleged in plaintiffs' amended complaint set forth a claim for breach of fiduciary duty under Iowa law.

■ The Iowa Limited Partnership Act provides that a general partner in a limited partnership "has the rights and powers and is subject to the restrictions and liabilities of a general partner in a partnership without limited partners." Iowa Code § 545.403 (1990). A general partner in a partnership without limited partners is accountable to the partnership as a fiduciary. *See id.* § 544.21. Thus, a general partner in a limited partnership is accountable to the limited partners as a fiduciary. The Supreme Court of Iowa has stated:

A partnership involves fiduciary relations, and no partner may deceive his

---

**9.** The Supreme Court recently granted certiorari on the issue whether reliance is an element of a section 14(a) claim. *Sandberg v. Virginia Bankshares, Inc.,* 891 F.2d 1112, 1119 (4th Cir.1989), *cert. granted in part,* — U.S. —, 110 S.Ct. 1921, 109 L.Ed.2d 285 (1990); *see Cowin v. Bresler,* 741 F.2d 410, 426 (D.C.Cir.1984) (reliance is not an element of a claim under section 14(a)).

copartners for his benefit and their injury by false representations or concealments, and this obligation of partners to exercise the utmost good faith toward one another applies not only during the life of the partnership, but extends to their settlements and transactions from the inception of the partnership to its dissolution, as well as for the purchase or sale of a partner's share in the business.

*Gibson v. Deuth,* 220 N.W.2d 893, 896 (Iowa 1974); *Joseph v. Mangos,* 192 Iowa 729, 185 N.W. 464, 465 (1921).

Iowa law recognizes that partners may supplement their statutory and common law rights and obligations in the partnership agreement. *Porter v. Barnhouse,* 354 N.W.2d 227 (Iowa 1984) (terms of partnership's dissolution agreement superseded general partner's common law rights and obligations); *Wolf v. Murrane,* 199 N.W.2d 90 (Iowa 1972) (partnership agreement is a contract between the parties); *Anderson v. Dunnegan,* 217 Iowa 672, 250 N.W. 115, 118 (1933) ("subject to the rights of third parties and the restraints of statutory law and general public policy, partners may create such relations as they see fit."). Furthermore, under Iowa law, the terms of a partnership agreement govern both a dissolution of the partnership, *see Porter,* 354 N.W.2d at 227, and a sale of the partnership's assets to one of the partners, *see Greenberg v. Alter Co.,* 255 Iowa 899, 124 N.W.2d 438, 440–41 (1963).

Plaintiffs allege that the sale of the limited partnership interests did not comply with the partnership agreement. They contend that the consent of the limited partners was premised on inadequate disclosure and, therefore, was not valid. Iowa courts have not fully addressed the scope of a general partner's duty in transactions with the partnership. At a minimum, a general partner in a limited partnership owes the partnership a duty of good faith and full disclosure. *See Gibson,* 220 N.W.2d at 896; *Joseph,* 185 N.W. at 465. In the analogous context of a corporate director's duty to corporate shareholders,[10] the Iowa Supreme Court has stated:

> Corporate directors and officers may under proper circumstances transact business with the corporation including the purchase or sale of property, but it must be done in the strictest good faith and with full disclosure of the facts to, and consent of, all concerned.... Such transactions are scanned by the courts with skepticism and the closest scrutiny, and may be nullified on slight grounds. It is the policy of the courts to put such fiduciaries beyond the reach of temptation and the enticement of illicit profit.

*Cookies Food Products, Inc. v. Lakes Warehouse Distrib., Inc.,* 430 N.W.2d 447, 452 (Iowa 1988); *Des Moines Bank & Trust Co. v. George M. Bechtel & Co.,* 243 Iowa 1007, 51 N.W.2d 174, 217 (1952). Under this standard, counts II and III of plaintiffs' amended complaint do set forth a cognizable claim for relief. Plaintiffs allege that defendants offered to purchase the limited partners' interests without considering the best interests of the limited partners and without making adequate disclosures regarding the value of the partnership's assets. Accepting these allegations as true, the Court finds that plaintiffs have stated a claim for breach of fiduciary duty under Iowa law.[11]

Plaintiffs' assertion that the General Partner violated a duty to obtain the highest possible price for the limited partners' interests also states a claim un-

---

10. The Court refers to the scope of a corporate director's fiduciary duty because the division of authority in a limited partnership is very similar to that in a corporation. A general partner in a limited partnership has the authority to manage the partnership's day-to-day business just as a corporate board of directors manages a corporation's day-to-day business. On the other hand, limited partners, like corporate shareholders, do not manage the limited partnership's everyday affairs. The limited partner's reliance on the general partner is comparable in scope to the shareholder's reliance on the directors. The general partner's fiduciary duty logically should be similar to a corporate director's.

11. The Court makes no determination at this stage whether the General Partner's substantial disclosures in fact contained any material misstatements or omissions.

der the terms of the Partnership Agreement. The Partnership Agreement contained a provision governing the price of the Partnership's assets in the event of a sale without the approval of the limited partners. If plaintiffs can show that the limited partners' approval was not valid, that provision will govern plaintiffs' claim. Iowa law itself does not impose a duty to obtain the highest possible price for a limited partner's interest.[12] Whether Iowa law imposes a lesser duty to obtain an objectively fair price for a limited partner's interest is not important for this case because the Partnership Agreement supersedes any common law duties. *See Porter*, 354 N.W.2d at 227. If the limited partners' approval was not valid because the General Partner failed to make adequate disclosures, then the General Partner was obligated to pay the consideration that the Partnership Agreement required. For this reason, the Court denies defendants' motion to dismiss counts II and III of plaintiffs' amended complaint.

## C. Defendants' Motion To Extend

Defendants have moved for an extension of time in which to respond to Count I of plaintiffs' complaint up to and including ten days after the Court rules on defendants' motion to dismiss. Plaintiffs have opposed the motion on the grounds that a motion under Rule 12(b) does not toll the time to respond to counts that the motion does not address. Plaintiffs have requested costs including attorneys' fees in relation to opposing defendants' motion. Defendants' request for an extension of time has not halted the progress of discovery or otherwise delayed the case. The Court, therefore, grants defendants' motion for an extension of time to respond to count I and denies plaintiffs' request for costs.

### Conclusion

The Court finds that plaintiffs' claims are not typical of the proposed class members' claims. Plaintiffs did not purchase their limited partnership interest pursuant to the prospectus, and plaintiffs did not vote on the amendment and sale of the limited partnership. Plaintiffs' position is not typical as to the scope of disclosure, and plaintiffs are subject to a unique defense on the issue of reliance. The Court, therefore, denies plaintiffs' motion for class certification. The Court also denies defendants' motion to dismiss counts II and III of plaintiffs' amended complaint. Although Iowa law does not require a general partner to obtain the highest possible price for a limited partner's interest, plaintiffs' allegations set forth a claim for relief under Iowa law and the Partnership Agreement. The Court grants defendants' motion for an extension of time in which to respond to count I up to and including 10 days from the date of this Opinion.

---

12. Such a duty would be impossible to administer. Courts could not set standards to determine what the highest possible price for a partnership interest would be. As a consequence, realistically the limited partnership could never be sold.